8 F.3d 31
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Juan Luis GALENO-ROMERO, Defendant-Appellant.
 Nos. 93-50163, 93-50176.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 20, 1993.*
Decided Oct. 6, 1993.
 
 Before: FLETCHER, POOLE and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 In these consolidated cases, Juan Luis Galeno-Romero appeals the 30-month sentence, imposed following his pleas of guilty to transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(B) and failure to appear in violation of 18 U.S.C. § 3146. Galeno-Romero contends the district court erred, first, by declining to grant him a downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and, second, by departing upward four levels based on conduct already taken into account by the Guidelines. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 A. Acceptance of Responsibility
 
 3
 We review for clear error a district court's finding whether a defendant has accepted responsibility for his conduct. United States v. Ford, 989 F.2d 347, 352 (9th Cir.1993). "Because the sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility, the district court's determination is entitled to great deference on review." Id. (citing U.S.S.G. § 3E1.1, comment. (n. 5) (1991)).
 
 
 4
 Here, Galeno-Romero pleaded guilty on December 19, 1991 to transporting illegal aliens. He failed to appear at sentencing on February 24, 1992, and a bench warrant was issued for his arrest. He was arrested five months later, and subsequently pleaded guilty to jumping bail. At sentencing, on December 14, 1992, Galeno-Romero told the district court that he had not stopped when border patrol agents at the San Clemente checkpoint asked him to because he was afraid they would hit him. The record shows that he proceeded instead to lead them on a 35 mile chase through traffic at speeds of up to 105 miles per hour with four undocumented aliens locked in the trunk of his Chrysler Cordova. The district court found Galeno-Romero's explanation for his conduct incredible and, in light of that statement and his failure to appear, determined that he had not accepted responsibility for his conduct.
 
 
 5
 Galeno-Romero contends that, because he jumped bail, the district court refused even to consider whether he qualified for the acceptance of responsibility adjustment. We disagree. The record reflects that the district court considered but rejected Galeno-Romero's explanation for his conduct. In light of the evidence, we discern no clear error in the district court's finding that Galeno-Romero did not accept responsibility for his crimes. See Ford, 989 F.2d at 353.
 
 B. Upward Departure
 
 6
 We have articulated a three-part test for evaluating a district court's decision to depart from the Guidelines. United States v. Lira-Barraza, 941 F.2d 745, 746-47 (9th Cir.1991) (en banc). First, we review de novo the district court's finding of an "unusual circumstance" not adequately taken into consideration by the Guidelines. Id. at 746. Second, we review for clear error the factual findings that support the departure. Id. at 746-47. Finally, we review the extent of the departure to determine whether it is reasonable in light of the standards and policies incorporated in the Sentencing Reform Act and the Guidelines. Id. at 747.
 
 
 7
 The Guidelines mandate a two-level increase to a defendant's base offense level "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. We have held that this adjustment is appropriate when alien passengers are endangered in the course of their smuggler's flight from law enforcement agents. United States v. Hernandez-Rodriguez, 975 F.2d 622, 626 (9th Cir.1992).
 
 
 8
 Moreover, the Guidelines explicitly authorize an upward departure for "offenses involving ... dangerous or inhumane treatment" of aliens, U.S.S.G. § 2L1.1, comment. (n. 8), and we have upheld sentences reflecting both the adjustment mandated by section 3C1.2 and the departure suggested in section 2L1.1 in cases where "the defendant embarks upon a high-speed dangerous flight in a vehicle overloaded with human beings who are being treated like mere cargo." Hernandez-Rodriguez, 975 F.2d at 626 (defendant traveled for more than three hours at speeds up to 80 miles per hour with four aliens in the cargo compartment of a Datsun 240Z); see also United States v. Cruz-Ventura, 979 F.2d 146, 147 (9th Cir.1992) (defendant traveled more than twelve miles at speeds up to 100 miles per hour, using all the travel lanes as well as the median strip and the shoulder with four aliens locked in the trunk of a Buick Le Sabre).
 
 
 9
 At sentencing, Galeno-Romero was assessed a two-level upward adjustment pursuant to section 3C1.2 for reckless endangerment during flight. His adjusted base offense level exposed him to a Guidelines range of 15 to 21 months' incarceration. The district court then departed an additional four levels, analogizing the crime to operation of a common carrier under the influence of drugs or alcohol, illegally restraining a person to facilitate the commission of a crime, and using a dangerous weapon in the commission of a crime.
 
 
 10
 Galeno-Romero argues that his conduct was already taken into account by the Sentencing Commission in section 3C1.2. We disagree. Our precedent authorizes further departure under section 2L1.1 in the egregious case where vehicles are "overloaded with human beings who are being treated like mere cargo." Hernandez-Rodriguez, 975 F.2d at 626. The district court properly concluded that this was such a case. See Lira-Barraza, 941 F.2d at 746.
 
 
 11
 Moreover, Galeno-Romero does not dispute the facts that he ignored Border Patrol agents' directions to stop at the checkpoint, and then led them on a 35-mile high-speed chase with four people locked in his trunk. We discern no clear error. See id. at 746-47.
 
 
 12
 Finally, the four-level departure in this case was comparable to that authorized for similar crimes. We conclude on this basis that the extent of the departure was reasonable. See Lira-Barraza, 941 F.2d at 751.
 
 
 13
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3